

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of June, two thousand seventeen.

PRESENT: BARRINGTON D. PARKER,
RICHARD C. WESLEY,
CHRISTOPHER F. DRONEY,
*Circuit Judges*.

------------------------------------------------------------------------

BENEX LC,

*Plaintiff-Appellant*,

v.  No. 16-4076-cv

FIRST DATA MERCHANT SERVICES CORPORATION,
*Defendant-Appellee*.

------------------------------------------------------------------------

FOR PLAINTIFF-APPELLANT: TIMOTHY J. MACFALL (Seth D. Rigrodsky, *on the brief*), Rigrodsky & Long, P.A., Garden City, NY.

FOR DEFENDANT-APPELLEE: NOAH A. LEVINE (Alan E. Schoenfeld, *on the brief*), Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY; Albinas J. Prizgintas, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC; David C. Marcus, Wilmer Cutler Pickering Hale and Dorr LLP, Los Angeles, CA.

1

Appeal from a November 14, 2016, judgment of the United States District Court for the Eastern District of New York (Seybert, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Benex LC appeals from a judgment of the district court granting Defendant-Appellee First Data Merchant Services Corporation's motion to dismiss as to Benex's claim for breach of the implied covenant of good faith and fair dealing. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we recount here only as necessary to explain our decision to affirm.

The complaint alleges the following facts relevant to this appeal. First Data provides services that enable merchants to accept credit and debit cards from customers. To cover its costs—including various interchange and other fees paid to third parties—and turn a profit, First Data charges fees to merchants like Benex. In its standard contracts, like the one Benex signed, First Data provides two pricing options. The first, which Benex chose, is a flat rate (referred to as the "Discount Rate"), which is calculated "Based on Gross Transaction Volume." App. 41 (emphasis omitted). The second (referred to as the "Network IC Pass Thru") charges the merchant certain fees (known as "interchange fees") plus a markup, which is also calculated "Based on Gross Transaction Volume." App. 41 (emphasis omitted). Nowhere in the contract is an express provision requiring, under either pricing plan, First Data to remit to the merchant any refunds received from third parties in the event of a customer refund or chargeback (a customer's challenge to the legitimacy of a purchase). In practice, however, First Data remits refunds of certain fees to merchants who opt for the IC Pass Thru option, but not to those, like Benex, who choose the flat-fee Discount Rate.

Benex contracted with First Data by completing and signing First Data's Merchant Processing Application and Agreement ("the Application"), and agreeing to First Data's Program Terms and Conditions ("the Program Guide"), which were incorporated into the Application (collectively, "the Agreement").

After the parties signed the Agreement, First Data facilitated Benex's acceptance of credit and debit cards. In the event of customer returns and chargebacks, because Benex was charged the Discount Rate, and not the IC Pass Thru rate, First Data did not remit to Benex any fees that third parties returned to First Data in connection with such transactions.

In light of First Data's failure to return the fees in question, Benex filed a class action complaint asserting claims for (1) breach of the implied covenant of good faith and fair dealing under New York law, (2) conversion, and (3) unjust enrichment.

First Data responded by filing a motion to dismiss Benex's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). It argued, in part, that the Agreement precluded Benex's claims because it provided that Benex was charged fees on the basis of "Gross Transaction Volume," and "Gross" was defined as the "total amount of Card sales, without set-off for any refunds or Credits."

The district court granted First Data's motion. In relevant part, the court agreed that the Agreement's provisions requiring Benex to pay fees based on its gross transaction volume without set-off precluded Benex's implied covenant claim. The court therefore dismissed that claim, but did so without prejudice and granted Benex leave to amend its complaint. The court then went on to dismiss Benex's conversion and unjust enrichment claims with prejudice.

Benex then filed an amended complaint. That complaint omitted Benex's conversion and unjust enrichment claims, but reasserted its implied covenant of good faith and fair dealing claim and added a third-party beneficiary claim asserting that First Data had breached its agreements with MasterCard. Benex's amended complaint also alleged that the Agreement provision stipulating that Benex paid fees based on its gross transaction volume was a "heading," which the Agreement stated was "for convenience of reference only" and could "not in any way affect the meaning or construction of any provision of" the Agreement.

First Data moved to dismiss Benex's amended complaint. First Data argued that the amended complaint was "nothing more than a restatement of [Benex's] original claim." First Data then responded to Benex's argument that the term "Gross Transaction Volume" was merely a heading by asserting that Benex's argument was incorrect under the terms of the Agreement and was barred by the "law of the case" doctrine because the district court had already concluded that the term was a substantive provision.

The district court granted First Data's motion to dismiss Benex's amended complaint. The court first dismissed Benex's third-party beneficiary claim as outside the scope of the court's permission to amend the complaint. With respect to Benex's renewed implied covenant claim, the court reaffirmed its prior conclusion that the Agreement's payment provisions precluded that claim. The court also refused to consider Benex's allegation that the phrase "Gross Transaction Volume" was a "heading" that could not affect the Agreement's substantive terms. That allegation, the court explained, was a legal argument that Benex had improperly "couched" as a new factual allegation.

Benex now appeals. It challenges the judgment of the district court only with respect to the court's ruling on Benex's implied covenant of good faith and fair dealing claim, not with respect to its conversion, unjust enrichment, or third-party beneficiary claims.

We begin by addressing the source of our subject matter jurisdiction, as there is some disagreement between the parties on that issue. Federal subject matter jurisdiction exists here pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Appellate jurisdiction exists pursuant to 28 U.S.C. § 1291.

"We review *de novo* the dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). We also review the district court's interpretation of a contract *de novo*. *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 720 (2d Cir. 2013).

There is no dispute that New York law governs our resolution of this appeal. The Agreement expressly provides that it is governed by, and interpreted according to, "the laws of the State of New York." App. 82.

Applying New York contract law and the applicable standard of review, we affirm the judgment of the district court because the court correctly concluded that Benex's claim was precluded by the terms of the Agreement.

The Agreement included a table that contained a description of the fees that First Data removed from Benex's transactions. The top of that table contained a row that stated: "**Discount Fees** *(Based On Gross Transaction Volume)*." App. 41. The definitions section of the Agreement defined the word "Gross" as follows: "When referred to in connection with transaction amounts or fees, [Gross] refers to the total amount of Card sales, *without set-off for any refunds or Credits*." App. 79 (emphasis added).

The term "Gross," which appeared next to the words "Discount Fees" and at the top of the table detailing the fees First Data would charge Benex, plainly referred to "fees." The definition of the word "Gross" therefore applied to the use of that word in the table. Because "Gross" was defined to exempt set-offs, refunds, and credits, the Agreement clearly provides that the fees Benex was charged were not refundable. That construction defeats Benex's implied covenant claim. Benex agreed to a flat fee of 2.69%. If it wanted a refund of a portion of that fee in the event of customer refunds/chargebacks, it could have bargained for that exchange. However, it cannot now add such a term to the

4

contract. Under New York law, the implied covenant of good faith and fair dealing can only impose obligations consistent with the terms of the contract, and the implied covenant cannot add substantive terms not included therein. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198–99 (2d Cir. 2005). Ruling in favor of Benex would require contravening both of those restrictions.

Benex's argument to the contrary is not availing. Even assuming that Benex properly raised its argument that the term "Gross Transaction Volume" was a "heading" that cannot "affect the meaning or construction of any provision of [the] Agreement," the row at the top of the table detailing fees where that phrase is found is not a "heading." Black's Law Dictionary defines a "heading" as a "brief title or caption of a section of a . . . contract." Black's Law Dictionary 834 (10th ed. 2014). The first row in the table is not the title or a caption of a section of the Agreement. It does not identify the beginning of a separate section of the Agreement. The headings in the Agreement are instead the terms, set off from the text of the Agreement and numbered chronologically or lettered alphabetically, that describe the provisions that follow. The district court therefore properly dismissed Benex's complaint.

We have considered Benex's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit